ARNETT, *vs.* GRIFFIN, tax collector.

Where one hundred per cent. of a county tax of one hundred and ninety-nine per cent. was recommended by the grand jury, and the remainder was authorized by a local act to provide for paying bonds and coupons, coupled with items which needed no recommendation of the jury, the court was right to dismiss the affidavit of illegality attacking the tax assessed as illegal.

Tax. Laws. Illegality. Before Judge WRIGHT. Decatur Superior Court. November Term, 1877.

The grand jury of Decatur county recommended a county tax of one hundred per cent. on the state tax for the year

1873. The county commissioners assessed a tax of one hundred and ninety-nine and one-third per cent. of the state tax. The objects of the tax were specified, and more than 99⅓ per cent. was authorized by local enactments, and made up of items which required no recommendation. A *fi. fa.* was issued against Arnett, and levied on certain lots belonging to him. He filed an affidavit of illegality, which was dismissed, and he excepted.

The other facts are contained in the opinion.

O. G. GURLEY; D. H. RUSSELL, by brief, for plaintiff in error.

BOWER & CRAWFORD, for defendant.

JACKSON, Judge.

Three grounds are taken in this affidavit of illegality, all of which, on demurrer, were overruled by the court, and Arnett excepted—first, because the commissioners, after the grand jury had recommended a tax of 100 per cent. only, on the state tax, assessed a tax of 199⅓ per cent. upon said state tax, to-wit: 75 per cent. to pay bonds and coupons on county debt; 25 per cent. to repair court-house and jail, and buildings and repairing bridge, and keeping ferry; 33⅓ per cent. to pay sheriff, jailor and other officers' fees; 2 per cent. to pay coroner's fees; 32 per cent. to pay jurors; 20 per cent. to pay the poor; 12 per cent. for bailiff's costs, non-resident witnesses, fuel, servants' hire and stationary. Secondly, because said *fi. fa.* was levied by a constable. Thirdly, because the *fi. fa.* was issued by Griffin, tax collector, and not *as* tax collector.

In 18 *Ga.*, 47, this court held that the inferior court could not assess an extraordinary tax for county purposes, under the act of 1821, without a recommendation of two-thirds of the grand jury.

In 34 *Ga.*, 370, it was held that the power to tax for public bridges, by the act of 1799, was unlimited except by the

cost of building such bridges; that the tax to support paupers might extend to one-eighth of the general tax, prior to the Code; and that, in addition to the taxation for ordinary purposes, the inferior court could levy fifty per cent. as an extraordinary tax, on the recommendation of the grand jury.

In 42 *Ga.*, 229, it was held that the ordinary had the right to levy an extraordinary tax not exceeding 50 per cent. on the state tax, if the grand jury did not recommend the extra tax, provided such tax, specified in the order, showed that it was to pay a judgment against the county, or a debt required by *mandamus*, or for necessary current expenses; and that a tax of one hundred and fifty per cent., levied without the consent of the grand jury, was illegal and void.

In 47 *Ga.*, 639, it was held that the ordinary had the power, under section 502 of the Code, to levy an extra tax to keep in repair county buildings and records without a recommendation of the grand jury—but that in all other cases the ordinary could not levy an extra tax on the general state tax, for county purposes, without a recommendation of the grand jury. If, however, no jury is impaneled, or they refuse to recommend enough to discharge any judgment against the county, or pay any debt for which there is a *mandamus*, or the necessary current expenses of the county for the year, then the ordinary may levy not exceeding fifty per cent. for such purposes without the recommendation of the grand jury—fifty per cent. being the limit with the recommendation of the jury, the ordinary cannot exceed that amount without it.

In 52 *Ga.*, 233, it was held that the ordinary could levy, for county buildings and debts due for the same, any sum in the discretion of that officer, under the supervision of the judge of the superior court by *mandamus* or injunction—and, that besides this tax for county buildings, the ordinary could levy, to pay judgments etc., etc., not exceeding fifty per cent.—that the tax for the poor under the act of 1818 is not within the fifty per cent. limit of §503, nor the

100 per cent. limit of §515—and that when debts against a county (other than debts for public buildings and repairs) accumulate so that fifty per cent. will not pay them, then the grand jury may go to the extent of one hundred per cent. to pay them, and in such cases creditors have the right to 25 per cent. of this sum if there be not enough to pay the current expenses and the debt.

In the case before us now, the grand jury recommended 100 per cent., and refused to go beyond it, but the county commissioners did go beyond it and levied a tax for nearly 200 per cent., and the question is, was this levy authorized by law?

To test this, it will be necessary to consider the items of taxation as set out in the record. The first item is 75 per cent. to pay a debt of the county in bonds and coupons issued under the act of 1872—see acts of 1872, page 407. That act authorizes the bonds to be issued by the commissioners and requires them in the 2d section thereof to provide for the prompt payment of the bonds—principal and interest. How provide? We know of no way except by taxation. The act of 1872, then, empowers the *commissioners* to tax without reference to the grand jury; and we hold that this tax is authorized by this local law and stands independent of the general law, and the adjudications of this court thereon, and needs no co-operation of the grand jury to legalize it.

So the item of 20 per cent. for the poor is good without the grand jury's recommendation, at least to the extent of 12½ per cent. under the act of 1818—34 *Ga.*, 370; 52 *Ga.*, 233.

So, 25 per cent. for the public buildings and bridges did not need the recommendation to make it legal—52 *Ga.*, 233; 34 *Ga.*, 370. A part of this tax seems to have been for keeping a ferry, but a very small portion evidently. These items reduce the tax below 100 per cent., and the grand jury recommended that per cent., and thus legalized the balance of the tax.

The constable could levy on the land and return to the sheriff to sell—Code, §§886—888.

It makes no difference that the tax collector issued the tax *fi. fa.* leaving out the little word "as." It means that he did the act as collector.

Judgment affirmed.