# SOUTHERN RAILWAY COMPANY *v.* GORDON COUNTY
## *et al.*

No. 8297. DECEMBER 21, 1931.

*McDaniel, Neely & Marshall* and *Sam P. Maddox,* for plaintiff in error.

*J. G. B. Erwin* and *Orville A. Park,* contra.

HILL, J. The Court of Appeals (in Case No. 20506), requested instructions from the Supreme Court upon the following questions:

"1. Can the proper authorities of a county levy a tax for a number of purposes which must be classified as current expenses, when the aggregate of such items exceeds fifty per cent. of the State tax, accompanied by a levy for other county purposes, but not accompanied by a levy for accumulated debts?

"2. Can the proper authorities of a county legally levy a tax for the purposes stated in items 3, 4, 5, 6, and 9 of section 513 of the Civil Code (1910), when the aggregate of such items exceeds fifty per cent. of the State tax, accompanied by a levy for other county purposes, but not accompanied by a levy for accumulated debts?"

As we construe these questions, we must answer both in the light of the decisions of this court in *Central of Georgia Railway Co.* v. *Wright,* 156 *Ga.* 13 (118 S. E. 709), and *Central of Georgia Railway Co.* v. *Wright,* 165 *Ga.* 631 (142 S. E. 292), in the affirmative. While Civil Code (1910) §§ 507 and 508 are not specifically mentioned in the questions propounded by the Court of Appeals, the construction of those sections, authorizing county-tax levies, is necessarily involved. They have been expressly construed by this court. In the case first cited it was held: "Under the Civil Code of 1910, § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses of the county, but a levy to pay both accumulated debts and current expenses, or a levy for either of these purposes, must not exceed 100 per cent. of the State tax. . . The tax authorized by the above section is in addition to that provided in the Civil Code (1910), § 508." This decision was concurred in by all six Justices, and is a precedent in such cases. And the questions propounded in the instant case are substantially the same as those propounded

at that case. In the case in 165 *Ga.* 631, this court held: "Under § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax, to pay lawful current expenses of their counties." This decision was concurred in by all the Justices except Mr. Justice Atkinson, who dissented. The opinions of the court in these cases, were written by Mr. Justice Hines, who said:

"1. This brings us to construe sections 507 and 508. By section 508, 'The ordinaries have power to raise a tax for county purposes, over and above the tax they are hereinbefore empowered to levy, and not to exceed fifty per cent. upon the amount of the State tax for the year it is levied.' It will be noted that the tax here provided for is 'for county purposes.' The purposes for which county taxes can be levied are fixed by the constitution of this State, as amended. Civil Code (1910), § 6562; Acts 1910, p. 42; Acts Ex. Sess. 1926, p. 30. These purposes are partially stated in the Civil Code (1910), § 513. It is to be borne in mind that the power to assess taxes for county purposes is broader than the power to assess county taxes for current expenses. The language, 'for county purposes,' in § 508, is not the equivalent of the expression, 'current expenses of the county,' found in § 507. Current expenses 'include ordinary expenses.' 'County purposes' include all purposes for which county taxes can be assessed, both ordinary and extraordinary. *Seaboard Air-Line Ry. Co.* v. *Wright,* 157 *Ga.* 722 (122 S. E. 35). The tax which can be levied by the ordinaries under section 508 is by its very terms one 'over and above the tax they are hereinbefore empowered to levy.' The language, 'the tax they are hereinbefore empowered to levy,' in this section, clearly refers to a tax which they are empowered to levy under some preceding provision in the Code. This language refers to some law going before, to some power previously given, and to some tax which could be levied under authority previously conferred in the Code upon these officers. Section 508 is under section 2, art. 1, chap. 7, which deals with county revenue and sources of taxation. Turning to sections 504, 506, and 507 of sec. 1 of this article, which deals with 'Special and Extra Tax,' we find that the ordinaries under the first of these sections are authorized to levy an extra tax sufficient to carry into effect the purposes of sections 399 and 400 without the recommendation of a grand jury, whenever the necessities arise; that under section 506 these officers are au-

thorized to levy a tax for the support of the paupers of their counties, not to exceed twenty-five per cent. of the State tax; and that under section 507 these officers, whenever the tax levied under section 508 is insufficient, can levy a special tax, which may equal the State tax, to pay accumulated debts and current expenses. These three sections precede 508. Each of them authorizes the levy of a tax for a county purpose, and each occupies a place in the Code before section 508. So, construing sections 504, 506, 507, and 508 together, as they appear in the present Code and as they have appeared since the adoption of the Code of 1895, the tax which these officers are authorized to levy under section 508 is one 'over and above the tax' which they are authorized and empowered to levy under the first three sections. This seems to be the natural and reasonable construction of these four sections. When the tax authorized by section 508 is defined and described as one over and above another tax which these officers are authorized to levy under the previous and foregoing provisions of the Code, and when we find that the only preceding provisions which authorize a county tax are to be found in sections 504, 506, and 507, this construction seems demanded.

"2. It is true that section 507 does not expressly authorize the levy of a tax of 100 per cent. of the State tax for the payment of accumulated debts and current expenses. It clearly contemplates the payment of that percentage of the State tax for these purposes. In effect, this section makes it the duty of the proper county authorities to use an amount equal to 100 per cent. of the State tax in paying off accumulated debts and current expenses, and this amount, as we have seen, is to be over and above the amount of the fifty per cent. of the State tax which can be levied and collected under section 508. In *Tucker* v. *Justices of the Inferior Court,* 34 *Ga.* 370, 374, this court, speaking through Judge Harris, said: 'We have not been able to find either a general or local law, previous to 1860, conferring the power on the inferior court to levy a tax to pay petit jurors. Yet, if the duty of compensating them is imposed on the county treasury, the moneys arising from verdicts and confessions in civil cases, it is apprehended, will be applied to such purpose, and exhausted, before a tax for this purpose will be imposed. We are not sure but that the duty to pay petit jurors involves, necessarily, the right to

tax to pay the indebtedness on this account which may remain.' In *Arnett* v. *Griffin,* 60 *Ga.* 349, 352, this court, speaking through Judge Jackson, said: 'That act authorizes the bonds to be issued by the commissioners, and requires them in the 2d section thereof to provide for the prompt payment of the bonds—principal and interest. How provide? We know of no way except by taxation. The act of 1872, then, empowers the *commissioners* to tax without reference to the grand jury; and we hold that this tax is authorized by this local law and stands independent of the general law, and the adjudications of this court thereon, and needs no co-operation of the grand jury to legalize it.' So express conference of a power to levy a tax is not the only way in which such authority may be vested in the proper county authorities. The power to tax must be expressly conferred, or it must be bestowed upon the county authorities by clear and necessary implication. So the power to levy a tax may be given either expressly or by necessary implication. Under section 507 the county authorities are required to expend public funds in an amount equal to 100 per cent. of the State tax, in the payment of accumulated debts and current expenses; and when 100 per cent. of said tax will not pay both debts and current expenses, they are required to pay at least twenty-five per cent. of these debts annually. How are these funds to be provided? Clearly they must be provided by the levy of a tax, as there are no other sources of revenue with which to make such payment. Besides, the implied power to levy a tax under section 507 is referred to in section 508, in the language, 'over and above the tax they are hereinbefore empowered to levy.' · Thus it is expressly stated in section 508 that the proper county authorities have the power under section 507 to levy a tax thereunder.

"But it is insisted that a tax can be levied under section 507 only for the purpose of paying debts, and not for the purpose of paying current expenses. Counsel for the railway company assert that to construe this section as authorizing the levy of a tax to pay debts involves a considerable stretch of the imagination, but that it can not by any stretch of the imagination be construed to embrace power to levy a tax to pay current expenses. In our opinion it requires no greater stretch of the imagination to construe this section as authorizing the levy of a tax to pay current expenses than it does to construe it as conferring the power to levy a tax to

pay accumulated debts. This section refers to the payment of both accumulated debts and current expenses, and the codifiers in putting it into the Code of 1863, evidently contemplated the levy of a tax for both purposes. It is just as important, if not more so, to pay the current expenses of county government as it is to pay debts which the counties have permitted to accumulate.

"3. But it is insisted that the decisions of this court, upon the question of the amount of tax which can be levied by counties to meet current expenses, are in conflict; that its earlier decisions and one of its latest hold that a tax by a county to meet current expenses can not exceed fifty per cent. of the State tax, and that others hold that one hundred per cent. or more of the State tax may be levied to meet current expenses. We are urged to remove this confusion and conflict. The authorities relied upon by counsel for the proposition that a tax to pay current expenses can in no case exceed fifty per cent. of the State tax are *Barlow* v. *Ordinary,* 47 *Ga.* 639; *Waller* v. *Perkins,* 52 *Ga.* 233; *Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173); *Wright* v. *So. Ry. Co.,* 137 *Ga.* 801 (74 S. E. 529); *McGregor* v. *Hogan,* 153 *Ga.* 473 (112 S. E. 471); *McMillan* v. *Tucker,* 154 *Ga.* 154 (113 S. E. 391); *Blalock* v. *Adams,* 154 *Ga.* 326 (114 S. E. 345); *Carter* v. *Shingler Realty Co.,* 157 *Ga.* 118 (120 S. E. 784); *Seaboard Air-Line Ry. Co.* v. *Wright,* 161 *Ga.* 136 (129 S. E. 646). The cases which counsel allege are in conflict with the foregoing are *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (91 S. E. 681); *Southern Ry. Co.* v. *Wright,* 154 *Ga.* 334 (114 S. E. 359); *Southwestern R. Co.* v. *Wright,* 156 *Ga.* 1 (118 S. E. 552); *Central of Georgia Ry. Co.* v. *Wright,* 156 *Ga.* 13 (118 S. E. 709). All of these decisions were rendered since the adoption of the Code of 1861, which went into effect on January 1, 1863, and which is indifferently referred to as the Code of 1861 or as the Code of 1863.

"The principle embodied in the Civil Code (1910), § 507, is not of statutory origin, so far as we have been able to ascertain. It seems to have had its origin in codification. It has appeared in all of the Codes of this State in totidem verbis. Code 1863, § 487; Code 1868, § 549; Code 1873, §515; Code 1882, § 515; Pol. Code 1895, § 398. It did not appear in the Codes preceding that of 1895 in the same order in which it appeared in that Code, and in which it appears in the present Code. In the Codes preceding

that of 1895 it followed, but not immediately, the sections embracing the principle embodied in section 508 of the present Code. The codifiers of the Code of 1895 took this section from the position which it had occupied since the adoption of the Code of 1863, and placed it with the previous sections authorizing the levy of special and extra taxes, and in advance of section 508. The previous sections authorized the levy of special and extra taxes, and embraced the provisions appearing in sections 504 and 506 of the present Code; and the principle embraced in section 507 of the present Code was made to follow the two above sections, being the last section in section 1, having the caption of 'Special and Extra Tax,' in Article 1, with the caption, 'From Taxation,' and Chapter 7, with the caption, 'County Revenue.' Section 508 was placed as the first section under section 2, with the caption, 'Tax for County Purposes Generally; How levied,' in the same article and chapter. This change of the relative position of sections 507 and 508 wrought a great change in the meaning of these two sections. It made the tax authorized by section 507, after this change of position, an extra and special tax. This change of location of the two sections changed materially the meaning of section 508 of the Code. As we have seen, it made the tax authorized by section 508 one in addition to the special and extra taxes authorized by sections 504, 506, and 507, which precede this section, as is shown above. Before this change of location of section 507, the tax authorized by section 508 was one in addition only to special and extra taxes authorized by sections 504 and 506. Now the tax authorized by 508 is one in addition to the three special and extra taxes authorized by sections 504, 506, and 507. Thus the construction and meaning touching sections 507 and 508 were greatly changed by this transposition of these two sections."

We have quoted at length from the opinion of Mr. Justice Hines, because what is there said is peculiarly appropriate to the questions under review; and for an interesting review and discussion of all of the cases decided by this court on this question by Mr. Justice Hines, see his opinion. Counsel for the railway company relies upon the decision in *Seaboard Air-Line Railway Co.* v. *Wright,* 161 *Ga.* 136 (supra); but in the opinion just quoted Mr. Justice Hines, distinguished that case from the one then under review, and which latter case we hold contains questions similar to the ones

propounded by the Court of Appeals in the present case. So we reach the conclusion that the Civil Code (1910), § 508, limits the tax which can be levied by the county authorities to fifty per cent. of the State tax, but this tax is in addition to the taxes provided for in § 507. Under the questions propounded, a county can levy 100 per cent. of the State tax, whether there are accumulated debts or not. But where the question propounded inquires whether the proper authorities of a county can legally levy a tax for a number of purposes which must be classified as current expenses when the aggregate of such items exceeds fifty per cent. of the State tax, accompanied by a levy for "other county purposes" but not accompanied by a levy for accumulated debts, the language "other county purposes" should be construed to mean that the levy will not exceed the limit fixed by law.

As to the reference in question 2 to § 513, that section has nothing to do with the construction of the other sections involved. Section 513 merely enumerates the purposes for which a tax can be levied by the proper county authorities. The questions propounded by the Court of Appeals are answered in the affirmative.

*All the Justices concur, except Atkinson, J., who dissents.*

RUSSELL, C. J., concurring specially. I concur in the views expressed by Mr. Justice Hill, where the same are not in conflict with the views expressed by the writer in *Central of Ga. Ry. Co.* v. *Wright,* 165 *Ga.* 1, and subject of course to the ruling of the majority of the court in the case cited, that "county authorities, . . for the purpose of paying the indebtedness of the county, may levy an additional assessment for the purpose of paying its accumulated debts and the current expenses, unless the latter have been included in the levy for county purposes or otherwise provided for. This item of levy must be sufficient to pay off the accumulated debts of the county in four years," etc. I adhere to the views expressed in my special concurrence in *Central of Ga. Ry. Co.* v. *Wright,* 165 *Ga.* 631.

ATKINSON, J., dissenting. Both questions propounded by the Court of Appeals should be answered in the negative. The principles upon which this conclusion is based are sufficiently stated in the concurring opinion in *Atlantic Coast Line Railroad Co.* v. *Long County,* 167 *Ga.* 210, and the dissenting opinion of the writer in *Central of Georgia Railway Co.* v. *Wright,* 165 *Ga.* 631-641, and

the majority opinion in *Seaboard Air-Line Railway Co.* v. *Wright*, 161 *Ga.* 136. Items 3, 4, 5, 6 of Civil Code § 513 are considered as referring to "current expenses." Item 9 of said section could include "accumulated debts," but the language of the questions propounded by the Court of Appeals excludes the element of "accumulated debts" from consideration.